UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

BRIAN HARNEY, BRETT DEBOARD, and )
DARLA GREINER, on behalf of themselves )
and all others similarly situated, )
         Plaintiffs, )
       )
     vs. )     1:05-cv-1912-LJM-WTL
       )
SPEEDWAY SUPERAMERICA, LLC, )
      Defendant. )

## ORDER ON MOTION FOR SUMMARY JUDGMENT

     This cause is before the Court on Defendant's, Speedway SuperAmerica, LLC ("Speedway"),

Motion for Summary Judgment (Docket No. 22). Plaintiffs, Brian Harney ("Harney"), Brett DeBord

("DeBord")[1], and Darla Greiner ("Greiner") (these defendants collectively, "the Managers"), filed

this lawsuit in state court before it was removed to this Court pursuant to the Class Action Fairness

Act of 2005. The Managers seek to recover on behalf of themselves and all others similarly situated

pursuant to Indiana's Wage Claims Statute (Indiana Code § 22-2-9-1 *et seq.*) and Wage Payment

Statute (Indiana Code § 22-2-5-1 *et seq.*) for allegedly unpaid bonuses and wages.[2] The parties have

fully briefed the issues and this matter is now ripe for ruling.

     For the reasons stated herein, the Court **GRANTS** Speedway's motion.

---

    [1] It appears from the parties' briefs that Mr. DeBord's name was incorrectly spelled in
the caption. The Court will use "DeBord" in this Order.

    [2] Because she was not involuntarily terminated, Greiner is only seeking relief under the
Wage Payment Statute. *See* Pls.' Sur-Reply at 2, n.1.

# I.  BACKGROUND

The Managers are all former employees of Speedway whose employment ceased on October 11, 2005.  Harney began employment in April 2004, and was an assistant store manager at the time that he was fired.  DeBord began employment in March 2001, and was also an assistant manager at the time he was fired.  Greiner began employment on December 17, 1996.  She was a store manager at the time that her employment ceased and, unlike the other two plaintiffs, she chose to quit her employment.

During their employment, the Managers were paid on a weekly basis.  They were also eligible for certain bonuses under programs established by Speedway.  The different potential bonuses were outlined in detail in Speedway's Operations Manual and depended on the employee's classification during a particular month and quarter.  One of the bonus programs was the Store Manager Bonus Program, which permitted store managers to earn monthly bonuses based on monthly performance objectives for their individual stores.  Managers would earn bonus credits that could later be converted to cash payments.  The bonus was contingent on several factors, such as meeting sales and operation goals.  In addition, in order to receive this type of bonus, a store manager had to be employed on the last day of the second month after the bonus credits were earned.  Speedway reserved the right to "amend, suspend, terminate, or change" the program at any time. *See* Seidel Aff., Exs. A-B.

The second type of bonus program was the Associate/Lead Assistant Manager Bonus Program.  Similar to the Store Manager Bonus, receiving this type of bonus had an employment requirement attached to it.  Specifically, in order to receive this bonus, Speedway's policy required that an employee be employed as the associate/lead assistant manager on the first day of the month

and employed at the end of the second month following the month in which the bonus was earned. Like the Store Manager Bonus Program, Speedway reserved the right to "amend, suspend, terminate, or change" the Associate/Lead Assistant Manager Bonus Program at any time. *See* Seidel Aff., Exs. D-E.

The third and final type of bonus program was the Customer Satisfaction Rewards Program. This type of bonus was paid on a quarterly basis to assistant managers based on monthly objectives for their individual stores. Like the Store Manager Bonus, an employee would receive credits that could later be converted for a cash payout. Bonus credits were earned monthly if the assistant manager was employed on the first day of the month in which the credits were earned. Further, each credit would be given the value of $1.00 if the employee was still employed by Speedway on the last day of the second month after the end of the calendar quarter. Like the other types of bonuses, Speedway reserved the right to "amend, suspend, terminate, or change" the Customer Satisfaction Rewards Program at any time. *See* Seidel Aff., Exs. F-G.

Calculations for each of these bonuses was completed by Speedways's corporate office and then reviewed by region, district, and store managers. According to Speedway, the process of calculating and reviewing the bonuses typically took more than ten calendar days to complete. Paychecks were then mailed to the stores on Wednesdays following the end of a pay period. The Managers contend that they were not paid these bonuses in a timely fashion under the Wage Payment and Wage Claims Statutes because they were not paid within ten calendar days of being "earned." *See* Complaint, ¶¶ 31-33. They also assert that they were not paid all wages that were "due and owing" in a timely fashion after their separation from employment. *See* Complaint, ¶¶ 34-35. With the exception of the bonus payments that the Managers contend that they are entitled to receive, there

3

does not appear to be any dispute that Speedway timely-issued checks on October 19, 2005, for payment of the Managers' regular earned wages, including accrued but unused vacation pay, after the Managers' separation. *See* Seidel Aff., ¶¶ 12, 27-29, 47-50, 53-56 and Exs. C, H, and I.

## II. SUMMARY JUDGMENT STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990), *cert. denied*, 499 U.S. 923 (1991). Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Summary judgment is the "put up or shut up" moment in a lawsuit. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003), *reh'g denied*. Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997).  It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies.  *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory.  *See Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party.  *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997).  The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment.  *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996).  Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute.  *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).  "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party."  *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996), *cert. denied*, 519 U.S. 1115 (1997).

## III. **DISCUSSION**

This case involves claims under two different statutory provisions. Therefore, as an initial matter, it is necessary to lay out the differences between the two.

The Wage Payment Statute, Indiana Code § 22-2-5-1 *et seq.*, provides employees the right to receive wages in a timely fashion. *See St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 703 (Ind. 2002). The Wage Payment Statute requires that an employer pay its employees' wages within ten days of the date that they are earned and provides for damages against those employers who fail to do so. *See* Ind. Code §§ 22-2-5-1 and -2; *Naugle v. Beech Grove City Schs.*, 864 N.E.2d 1058, 1066-69 (Ind. 2007). By its terms, it only applies to current employees or those who voluntarily terminate their employment. *See* Ind. Code § 22-2-5-1; *Steele*, 766 N.E.2d at 705.

The Wage Claims Statute, Indiana Code § 22-2-9-1 *et seq.*, describes how disputes about the amount of wages due are resolved and requires that unpaid wages or compensation of a discharged employee are "due and payable at regular pay day for the pay period in which separation occurred." *See* Ind. Code § 22-2-9-2-(a); *Steele*, 766 N.E.2d at 704. Unlike the Wage Payment Statute, the Wage Claims Statute only applies to employees who have been discharged or suspended from work because of an industrial dispute. *See Steele*, 766 N.E.2d at 705.

Based on the differences in these two statutes, it is clear that Greiner's claims arise only under the Wage Payment Statute because she voluntarily terminated her employment with Speedway. In fact, she has now conceded as much. *See* Pls.' Sur-Reply at 2, n.1. With respect to Harney and DeBord, both of whom were discharged, the answer cannot be so easily categorized. However, the

6

Court concludes that (1) their claims for bonuses that they did not receive are governed by the Wage Claims Statute, and (2) those bonuses that they did receive while still employed, but which were paid outside of the ten-day period, are governed by the Wage Payment Statute.

Regardless of which statutory provision applies, it is clear that the Managers are not entitled to the unpaid bonuses. A condition for receiving those bonuses was continued employment, and it is undisputed that none of the Managers satisfied that criteria. Thus, even if the unpaid bonuses are "wages," the Court agrees that, at best, they are deferred compensation and therefore subject to forfeiture. *See Swift v. Speedway SuperAmerica LLC*, 861 N.E.2d 1212, 1215-16 (Ind. Ct. App. 2007), *reh'g and trans. denied* (concluding that bonuses under Store Manager Bonus Program were wages that could be forfeited and that plaintiff was not entitled to receive them because she had failed to meet the eligibility requirement of maintaining employment).[3] Because the Managers failed to meet the eligibility requirements for the unpaid bonuses, they are not entitled to receive them. Accordingly, the Managers claims for unpaid bonuses are **DISMISSED with prejudice.**

The final question to resolve is whether the Managers are entitled to damages for the failure of Speedway to pay bonuses within the ten-day period while the Managers were still employed. The answer depends on whether the bonuses are "wages." At first blush, *Swift* suggests that they are wages because it concluded that bonuses under the Store Manager Bonus Program were deferred compensation. However, *Swift* merely discussed the differences between present compensation and deferred compensation; it did not undertake an analysis about whether the bonuses are truly

---

[3] The program appears to be exactly the same as one of the programs involved in this case.

considered "wages" under the Wage Payment Statute or the Wage Claims Statute. Thus, the Court does not find *Swift* compelling or persuasive on that issue.

To resolve this dispute, the Court is guided by precedent from the Indiana Supreme Court. The Indiana Supreme Court has stated that "[a] 'bonus' is a wage 'if it is compensation for time worked and is not linked to a contingency such as the financial success of the company.'" *Highhouse, M.D. v. Midwest Orthopedic Inst., P.C.*, 807 N.E.2d 737, 740 (Ind. 2004) (quoting *Pyle v. Nat'l Wine & Spirits Corp.*, 637 N.E.2d 1298, 1300 (Ind. Ct. App. 1994). *See also Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1121-22 (7th Cir. 1998) (cited with approval by *Highhouse* for the proposition that pay based on profits rather than a claimant's own time, effort, or product was not a wage); *Manzon v. Stant Corp.*, 138 F. Supp. 2d 1110, 1113 (S.D. Ind. 2001) (cited with approval by *Highhouse* for the proposition that a bonus based on a financial target and achieving "individual personal objectives" was not a wage). Based on this definition, the Indiana Supreme Court concluded that a bonus payment tied to an employer's overall operations was not a wage. *See Highhouse*, 807 N.E.2d at 740.

The Indiana Supreme Court further illustrated the practical reasons why a bonus tied to other contingencies is not a "wage." Specifically, unlike wages, such bonuses often cannot be calculated within a short period of time after services are performed. *See id.* Finally, while the court cautioned that an employer cannot escape the law by obtaining an agreement from an employee that wages will not be paid within the statutorily-prescribed time period, it noted that the employment contract called for annual payments. *See id.* According to the *Highhouse* court, this fact lent support to the view that the parties recognized that frequent bonus calculations and payment would be difficult, if not

impossible.  *See id.*  In other words, this circumstance underscored that the parties themselves did not consider the bonus to be a wage.

Based on *Highhouse*, the Court concludes that the bonuses involved in this case are not "wages" under the Wage Payment Statute or Wage Claims Statute.  The bonuses were each contingent on factors other than time worked.  For example, the Store Manager and the Associate/Lead Assistant Manager Bonuses were based, in part, on meeting sales and operation goals.  Similarly, bonuses under the Customer Satisfaction Rewards Program were dependent on factors beyond an employee's individual performance.  Moreover, entitlement to the bonuses was explicitly conditioned on maintaining employment for a period of time.  Indeed, this condition made it impossible to calculate the bonuses at the time that the bonus credits were "earned" because this condition had not yet been satisfied.  Finally, because each bonus program explained when the bonus payments would be made, the parties should have been aware that payments were not like regular wages and that calculations would be difficult to make.  As in *Highhouse*, this circumstance further illustrates that the bonuses were not "wages."  Accordingly, in light of all of the foregoing, the Court finds that the bonuses at issue in this case were not "wages" within the meaning of the Wage Payment Statute or Wage Claims statute.

The Court's conclusion is not altered by the recent decision in *Reel v. Clarian Health Partners, Inc.*, --- N.E.2d---, 2007 WL 2481792 (Ind. Ct. App. Sept. 5, 2007).  There, Clarian had a policy of paying terminated employees their "paid time off" wages ("PTO wages") some fourteen days after paying the terminated employees their final regular wages.  As the court discussed, the PTO wages were "wages"under Indiana law, and the employees' right to the wages had vested.  *Reel*, ---N.E.2d ---, 2007 WL 2481792, *4-5.  Thus, because the PTO wages were wages under the statute

and the employees had a vested right to them, Clarian could not vary from the payment terms provided by law. *Id.* at *5.

Unlike the plaintiffs' PTO wages in *Reel*, the bonuses in this case were not wages under Indiana law.  Moreover, unlike the timing of payments in *Reel*, the timing for paying of bonuses in this case was in part due to the fact that entitlement to the bonuses was conditioned on maintaining employment.  Rather than being a matter of necessity or expediency, conditioning the payment on continued employment serves Speedway's interest in retaining quality managers and avoiding turnover and the cost of hiring or retraining replacement managers.  In short, *Reel* is distinct and the Court declines to apply it to this case.  The bonuses were not wages and the Managers are not entitled to damages for alleged late payments of them.  Accordingly, the Managers' claims for damages are **DISMISSED with prejudice**.

As a final matter, because the Court has dismissed all of the Managers' claims, the pending Motion for Class Certification (Docket No. 14) is now moot.  Therefore, the Court **DENIES as MOOT** that motion.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's, Speedway SuperAmerica, LLC, Motion for Summary Judgment (Docket No. 22), is **GRANTED**.  Plaintiffs', Brian Harney, Brett DeBord, and Darla Greiner, claims are **DISMISSED with prejudice**.

In addition, Plaintiffs' Motion for Class Certification (Docket No. 14) is **DENIED as MOOT**.

IT IS SO ORDERED this 13th day of September, 2007.

LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

**Electronically distributed to:**

Ronald E. Weldy
ABRAMS & WELDY
weldy@abramsweldy.com

William R. Groth
FILLENWARTH DENNERLINE GROTH & TOWE
wgroth@fdgtlaborlaw.com

Geoffrey S. Lohman
FILLENWARTH DENNERLINE GROTH & TOWE
glohman@fdgtlaborlaw.com

11